```
                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
                        SAN ANTONIO DIVISION

GLENN TROTTIE,                     *
                                   *
            Plaintiff,             *
                                   *
     v.                            *    CIV. NO. SA-15-CA-176-OLG
                                   *
WELL FARGO MERCHANT SERVS., LLC    *
and BEN BROWN,                     *
                                   *
            Defendants.            *
```

## MEMORANDUM AND RECOMMENDATION

Before the Court is plaintiff's Motion to Remand to State Court (docket nos. 5 and 7), to which defendants, Wells Fargo Merchant Servs., LLC and Ben Brown, have responded (docket no. 6). Upon consideration of the motion, response and applicable law, the Court believes plaintiff's motion should be **GRANTED**.

## BACKGROUND

This case arises from the dissolution of an employment relationship between plaintiff, Glen Trottie, and defendant, Wells Fargo. Plaintiff began working for Wells Fargo on or about May 31, 2007. (Docket no. 1, Plaintiff's Original Petition, pg. 2). On November 6, 2013, plaintiff filed an EEOC Charge of Discrimination, alleging he was being subjected to unequal terms and conditions of employment in violation of the Age Discrimination in Employment Act. (Id.). Plaintiff alleges that after filing the complaint, he continued to be subjected to further harassment by Ben Brown, the Regional Sales Manager for Wells Fargo, as well as by Wells Fargo's

management, servants, agents and employees. (Docket no. 1, pg. 3). On or about February 21, 2014, plaintiff, who was approximately sixty years old at the time, was terminated and replaced by an employee under 40 years of age. (Id; docket no. 15, pg. 2).

Plaintiff sued in state court, alleging that both Wells Fargo and Brown violated the Texas Labor Code by discriminating against him on the basis of his age and in retaliation for opposing discrimination practices in the workplace. (Docket no. 1, pg. 4). Additionally, plaintiff asserted a claim for intentional infliction of emotional distress against both Wells Fargo and Brown, as well as claims for defamation, libel, and slander per se as to Brown individually, alleging that Brown, in concert with Wells Fargo, continually disparaged Trottie's character, professionalism and work ethic to plaintiff's co-workers and sales team in an effort to discredit, ridicule and harass plaintiff. (Id., pgs. 5-6).

On March 6, 2015, defendant removed this suit, maintaining that plaintiff, a Texas resident, and defendant, a federally-chartered National Banking Association with its main office in South Dakota, were completely diverse.[1] (Id.). Although the state court petition also includes claims against defendant, Ben Brown, who, like plaintiff, is a Texas resident, defendant contends that removal was nevertheless proper because Brown was fraudulently

---

[1] The Notice of Removal was timely filed since, by agreement, Wells Fargo was not served with the suit until after February 2, 2015. (Docket no. 1, exh. A). *See* **28 U.S.C. § 1446(b)(1).**

joined to defeat diversity jurisdiction. (Docket no. 1). On March 23, 2015, plaintiff filed the present motion, seeking to remand this case to state court. (Docket no. 5).

## **APPLICABLE LAW**

The party removing a case to federal court has the burden to present facts sufficient to show federal subject matter jurisdiction exists. ***Willy v. Coastal Corp.***, 855 F.2d 1160, 1164 (5th Cir. 1988). Whether a case may be removed is a question of federal law to be decided by the federal courts. ***See Kansas Pub. Employees Retirement Sys. v. Reimer & Koger Assoc., Inc.***, 4 F.3d 614, 618 (8th Cir. 1993). Because the removal statute is strictly construed, any doubt about the propriety of removal is construed against removal. ***Owen Equip. & Erection Co. v. Kroger***, 437 U.S. 365, 377 (1978); ***Acuna v. Brown & Root Inc.***, 200 F.3d 335, 339 (5th Cir. 2000). The Court must resolve all disputed questions of fact relative to its subject matter jurisdiction and all ambiguities in favor of the non-removing party. ***Dodson v. Spiliada Maritime Corp.***, 951 F.2d 40, 42 (5th Cir. 1992).

In the present case, defendants allege that federal diversity jurisdiction exists because one of the named defendants was fraudulently, or improperly, joined. The party seeking removal bears a heavy burden of proving that joinder of an in-state defendant was improper. ***Smallwood v. Ill. Cent. R.R. Co.***, 385 F.3d 568, 574 (5th Cir. 2004)(en banc); ***see also Travis v. Irby***, 326

F.3d 644, 648-49 (5th Cir. 2003). To establish a fraudulent joinder, defendants must show either that: (1) there has been fraud in the plaintiff's recitation of jurisdictional facts; or (2) there is no possibility that the plaintiff would be able to establish a cause of action against the non-diverse defendant in state court. **Ameen v. Merck & Co., Inc.**, 226 Fed.Appx. 363, 368 (5th Cir. 2007); **Crockett v. R.J. Reynolds Tobacco Co.**, 436 F.3d 529, 532 (5th Cir. 2006). In determining whether the plaintiff can establish a state claim against the non-diverse party, the court considers whether there is any "reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." **Smallwood**, 385 F.3d at 573.

"The court may conduct a Fed.R.Civ.P. 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." **Id.** (footnote omitted). "The focus is on plaintiff's pleadings at the time of removal, **Cavallini v. State Farm Mut. Auto Ins. Co.**, 44 F.3d 256, 264 (5th Cir.1995); post-removal filings may be considered only to the extent they amplify or clarify facts alleged in the state-court complaint, with new claims or theories of recovery disregarded." **Akerblom v. Ezra Holdings, Ltd.**, 509 Fed.Appx. 340, 344 (5th Cir. 2013)(*citing* **e.g., Griggs v. State Farm Lloyds**, 181 F.3d 694, 700

4

(5th Cir.1999)("affidavit considered only to extent consistent with claims or theories in state-court complaint"); ***Asociacion Nacional de Pescadores v. Dow Quimica***, 988 F.2d 559, 565 (5th Cir.1993) ("affidavit considered only to clarify pre-removal, jurisdictional facts"); ***cf. Cavallini***, 44 F.3d at 263-65 ("affidavit and amended complaint not considered when state-court complaint itself contained no viable cause of action")).

## **DISCUSSION**

In their notice of removal, defendants maintain that plaintiff can not establish state causes of action against Brown, the non-diverse defendant, for defamation, libel, slander per se or intentional infliction of emotional distress[2]; therefore, this Court should not consider Brown's citizenship in determining whether diversity jurisdiction exists. (Docket no. 5). Plaintiff now moves to remand, maintaining that removal was improper because the parties are not diverse and, therefore, this Court lacks jurisdiction over the parties. Accordingly, the court considers "whether there is any reasonable basis for the court to predict that the plaintiff might be able to recover against [Brown] the non-diverse defendant" in state court. ***Smallwood***, 385 F.3d at 573. Should the court determine that plaintiff might recover against

---

[2]Plaintiff fails to address defendants' argument that he has no possibility of recovery on his claim for intentional infliction of emotional distress asserted against defendant Brown. The Court concludes plaintiff is conceding this point.

5

Brown in any of his state court actions, then plaintiff's motion to remand should be granted since Brown's citizenship destroys diversity jurisdiction; however, should the court determine that there is no reasonable basis for predicting that plaintiff might be able to recover against Brown in state court, then Brown's citizenship should be disregarded for the purposes of diversity jurisdiction, and plaintiff's motion to remand should be denied.

## A. Defamation

Plaintiff sued Brown for defamation, libel and slander per se. Defamation is "the invasion of a person's interest in her reputation and good name." **Hancock v. Variyam**, 400 S.W.3d 59, 63 (Tex. 2013)(*quoting* W. Page Keeton et al., **Prosser & Keeton on Torts § 111, at 771** (5th ed. 1984 & Supp.1988)); **see also** TEX.CIV. PRAC.& REM.CODE **§ 73.001**. To recover on a claim for defamation in Texas, plaintiff must show that: (1) the defendant published a statement; (2) that the statement was defamatory and concerned the plaintiff; and (3) that defendant acted with negligence regarding the truth of the statement. **See WFAA-TV, Inc. v. McLemore**, 978 S.W.2d 568, 571 (Tex. 1998); **Gipson v. Wal-Mart Stores, Inc.**, No. H-08-2307, 2008 WL 4844206, at *9 (S.D. Tex. Nov. 3, 2008). A statement is defamatory if it tends to injure the plaintiff's reputation and thereby exposes the person to public hatred, contempt, ridicule, or financial injury or if it tends to impeach that person's honesty, integrity, or virtue. **See Cain v. Hearst**

6

*Corp.*, 878 S.W.2d 577, 580 (Tex.1994); ***Hanssen v. Our Redeemer Lutheran Church***, 938 S.W.2d 85, 92 (Tex.App.-Dallas 1996, writ denied). In Texas, defamation claims must specifically state the time and place of the publication of such statements, to whom the defamatory statements were made, the actual words of the defamatory statements, and further, affirmatively plead that the speaker made the statements while acting negligently with regard to their truth. ***See Ameen***, 226 Fed.Appx. at 370; ***Hernandez v. Wal-Mart Assoc., Inc.***, NO. EP-06-CA-233-FM, 2006 WL 2883080, at *5 (S.D. Tex. Sept. 19, 2010);***see also Gipson***, 2008 WL 4844206, at *9.

Texas law recognizes two types of defamation: libel and slander. Libel involves the publication to a third party of a written defamatory statement about the plaintiff. ***Fields v. Keith***, 174 F.Supp.2d 464, 473 (N.D. Tex.2001)(*citing* ***M.N. Dannenbaum, Inc. v. Brummerhop***, 840 S.W.2d 624, 633-634 (Tex.App.—Houston [14th Dist.] 1992, writ denied)). Slander involves an oral defamation published to a third party without legal excuse. ***Id.*** Defamatory statements may be either per quod or per se. "For a defamatory oral statement to constitute slander per se, it must fall within one of four categories: (1) imputation of a crime, (2) imputation of a loathsome disease, (3) injury to a person's office, business, profession, or calling, and (4) imputation of sexual misconduct." ***Gray v. HEB Food Store No. 4***, 941 S.W.2d 327, 329 (Tex.App.—Corpus

Christi 1997, writ denied). The statements must be so obviously hurtful to a plaintiff's reputation that the jury may presume damages, including loss of reputation and mental anguish. *Hancock*, 400 S.W.3d at 63-4. Slander per quod, on the other hand, is not actionable per se and requires proof of both the existence and amount of damages. *Hancock*, 400 S.W.3d at 64; *see also Downing v. Burns*, 348 S.W.3d 415, 424 (Tex. App.–Houston[14th Dist.] 2011, no pet.).

In the present case, there is no question that in conducting a Rule 12(b)(6) analysis of plaintiff's petition, plaintiff fails to state a reasonable basis for recovery under state law as to his defamation claims. With respect to his claim for libel, plaintiff does not allege the publication to a third party of a written defamatory statement about the plaintiff. *Fields*, 174 F.Supp.2d at 473. Further, in his state court petition, plaintiff fails to identify specific defamatory statements, the time or place of such statements, and the party to whom these statements were made. *See Ameen*, 226 Fed.Appx. at 370. In an attempt to correct these deficiencies, plaintiff attaches to his motion to remand the affidavit of Samara McDougall, a former co-worker. (Docket no. 5, exh. 1). In the affidavit, dated August 14, 2014, Ms. McDougall states that in December of 2013, Brown told her that Trottie "makes things up in his mind." (Docket no. 5, exh. 1). McDougall also states that in September of 2013, Brown told her that "Glenn tells

8

me he visits with you in your market but I don't know if that is true." (Id.). Ms. McDougall concludes that as a result of these conversations, she was led to believe that "Mr. Brown was creating the innuendo that Mr. Trottie was not truthful" and that she "interpreted these comments as a direct attack on Mr. Trottie's business integrity and reputation." (Id.). Although defendant objects to plaintiff's reliance on Samira's affidavit, the court has discretion to consider it to the extent it amplifies or clarifies facts alleged in the state-court petition. **Griggs**, 181 F.3d at 700("affidavit considered only to extent consistent with claims or theories in state-court complaint"). Here McDougall's affidavit arguably addresses the deficiencies in plaintiff's petition with respect to his state court claim for defamation. **See Smith v. Shred-It USA**, No. 3:10-CV-831-O-BK, 2010 WL 3733907, at *4 (N.D. Tex. Aug. 12, 2010)(finding plaintiff's claim sufficiently specific where plaintiff cited the defamatory statements and alleged who said them to whom and the month and year of their publication).

However, even considering McDougall's affidavit to clarify or amplify the defamation claims alleged in plaintiff's state-court petition, Brown still fails to state a claim for which relief can be granted as to his libel claim and, in part, slander claim. With respect to his libel claim, Brown provides no facts, either in his pleading or in McDougall's affidavit, regarding a publication to a

9

third party of *a written statement* about the plaintiff. ***Fields***, 174 F.Supp.2d at 473. With respect to Brown's claim for slander, the allegedly defamatory statement that "[Trottie] tells me he visits with you in your market but I don't know if that is true," is not actionable as it "cannot reasonably be interpreted as stating actual facts about an individual."[3] ***Milkovich v. Lorain Journal Co.***, 497 U.S. 1, 20, 110 S.Ct. 2695, 2706 (1990). Brown states here not that Trottie is lying but that Brown is unable to determine whether he is telling the truth or not. Merely questioning the veracity of a person's statement generally does not state an actual fact about that individual. Further, Brown directs his statement to McDougall, the person Trottie claims to have visited. As such, it is unclear how publishing the statement to McDougall, who can verify Trottie's statement, would injure

---

[3]Defendant also argues that plaintiff fails to plead specific conduct demonstrating that Brown acted negligently with regard to the truth of the alleged defamatory statements. However, in his petition, plaintiff alleges the following:
> Brown, in the course and scope of his employment with Defendant Wells Fargo, Brown has continually criticized Plaintiff's character, professionalism and work ethic to Trottie's co-workers and members of his sales team. The statements were made *with no factual basis to support the allegations*, and were made solely *for the purpose of defaming Plaintiff* to his co-workers and peers *in an effort to discredit, ridicule and harass Plaintiff*, and to adversely affect his employment with Defendant Wells Fargo and *undermine his credibility* with his sales team.
>                                  *****
(Docket no. 1, Plaintiff's Original Petition, pg. 3). Elsewhere, plaintiff refers to defendants' conduct as "reckless and malicious", as well as as "false" and further alleges that "Brown's actions with regard to the false, misleading and damaging statements and innuendoes constitute actionable defamation, as well as libel and slander per se." (Id., pgs. 3-4). Arguably, this is sufficient to adequately allege that the statements were false and that defendant knew or should have known they were false. ***See Lawler v. Miratek Corp.***, No. EP-09-CV-252-KC, 2010 WL 2838359, at *4 (W.D. Tex. July 16, 2010).

plaintiff's reputation, expose him to public hatred, contempt, ridicule, or financial injury, or impeach his honesty, integrity, or virtue. *Cain*, 878 S.W.2d at 580. Moreover, to the extent McDougall, as the person Trottie claimed to have visited, has an interest in the matter, the statement is privileged. *ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 442 (5th Cir.1995)(*citing* *Schauer v. Memorial Care Sys.*, 856 S.W.2d 437, 449 (Tex. App.-Houston [1st Dist.] 1993, no writ), *cert. denied*, 517 U.S. 1104, 116 S.Ct. 1318, 134 L.Ed.2d 471 (1996)("accusations or comments about an employee by his employer, made to a person having an interest or duty in the matter to which the communication relates, have a qualified privilege.")).

With respect to Brown's oral statement that Trottie "makes things up in his mind," defendant, citing *Shaw v. Palmer*, 197 S.W.3d 854 (Tex. App.-Dallas 2006, pet. denied), maintains this statement too is not actionable because it is a protected opinion that is not verifiable. *See id.* at 857-58("use of term 'crazy' does not, in its common usage, convey a verifiable fact"). Plaintiff argues that this statement implies, not that plaintiff is crazy but, that he is untruthful; as such, it is a verifiable statement of fact. The meaning of a publication is generally a question of law to be determined by the court. *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.-Dallas 2003, no pet.)(*citing* *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114

11

(Tex.2000)). However, when a publication is ambiguous, it is for the jury to determine its meaning. *Cram Roofing Co., Inc. v. Parker*, 131 S.W.3d 84, 90–91 (Tex.App.-San Antonio 2003, no pet.). Here, there is a question of fact as to whether the statement, "Trottie makes things up in his mind," implies he is untruthful rather than crazy.

Viewing the statement in the light most favorable to plaintiff, the statement could feasibly refer to Trottie's propensity for dishonesty, particularly given Brown's earlier statement questioning whether Trottie was being truthful. Arguably, calling a person a liar invades a person's interest in his reputation and good name, and as such meets the definition of defamation. *Hancock*, 400 S.W.3d at 63; *see also Cain*, 878 S.W.2d at 580(statement is defamatory if it tends to injure a person's reputation, expose him to public hatred, contempt, ridicule, or financial injury, or impeach his honesty, integrity, or virtue). Whether plaintiff can establish that the statement is actionable per se because it uniquely injures him in his profession remains to be seen. *Hancock*, 400 S.W.3d at 66. At this juncture, the court need only determine whether there is any "reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.

Construing any doubt about the propriety of removal against removal, *Kroger*, 437 U.S. at 377, and resolving all disputed questions of fact relative to its subject matter jurisdiction and all ambiguities in favor of the non-removing party, *Dodson*, 951 F.2d at 42, the court believes there is a reasonable basis to predict that plaintiff might be able to recover on his defamation claim against Brown and therefore, defendants have failed to meet their burden of proving that Brown's joinder was improper. *Smallwood*, 385 F.3d at 573-4. Accordingly, the citizenship of Brown should not be disregarded for purposes of diversity jurisdiction and plaintiff's motion to remand should be **GRANTED.**

## RECOMMENDATION

Based on the foregoing, plaintiff's motion to remand should be **GRANTED.**

## Instructions for Service and Notice of Right to Object

The District Clerk shall serve a copy of this Memorandum and Recommendation on all parties either electronically or by mailing a copy by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), Fed.R.Civ.P., any party who desires to object to this Memorandum and Recommendation must serve and file specific written objections within 14 days after being served with a copy. ***Such party shall file the objections with the District Clerk and serve the objections on all other parties and***

13

***the Magistrate Judge***.  A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days after being served with a copy shall bar that party from ***de novo*** review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions to which the party did not object, which were accepted and adopted by the District Court.  ***Thomas v. Arn***, 474 U.S. 140, 150 (1985); ***Douglass v. United Servs. Auto. Ass'n***, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    **SIGNED** August 17, 2015.

_____
JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE